USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JAN 1 6 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

GUTHRIE HEALTHCARE SYSTEM,

                    Plaintiff,

        -v-

CONTEXTMEDIA, INC., et al.,

                    Defendants.

----------------------------------------------------------------- X

12 Civ. 7992 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

On October 26, 2012, plaintiff Guthrie Healthcare System filed a complaint against ContextMedia, Inc. and its Chief Executive Officer and President, Rishi Shah, alleging trademark infringement, unfair competition, and false designation of origin in violation of the Lanham Act, as well as common-law unfair competition and unjust enrichment. (ECF No. 1.) On October 28, 2013, plaintiff filed an amended complaint. (ECF No. 44.) On October 31, 2013, defendants filed the instant motion seeking summary judgment on all counts. (ECF No. 35.) On January 14, 2014, defendants filed a motion to strike plaintiff's jury demand. (ECF No. 65.)

For the reasons set forth below, defendants are entitled to summary judgment on the issue of monetary relief on plaintiff's Lanham Act claims: there is no triable issue of material fact as to actual consumer confusion, bad faith, or willful deception. However, genuine issues of material fact exist as to the merits of plaintiff's Lanham Act claims and state-law claims as well as defendant Shah's

individual liability. Accordingly, defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Additionally, because plaintiff may only seek equitable relief, plaintiff is not entitled to a jury. Defendants' motion to strike plaintiff's jury demand is thus GRANTED.

## I. BACKGROUND

### A. Factual Background

The following facts are undisputed, unless indicated otherwise. The Court recites only those facts relevant to its decision.

Plaintiff provides various medical care and healthcare services, including operating hospitals, clinics, and pharmacies. (Defs.' Rule 56.1 Statement of Undisputed Material Facts ("Defs.' 56.1") ¶ 1, ECF No. 41; Pl.'s Counterstatement of Undisputed Material Facts ("Pl.'s 56.1") ¶¶ 1, 5, ECF No. 59; Pl.'s Objs. and Resps. to Defs.' Rule 56.1 Statement ("Pl.'s Resp.") ¶ 1, ECF No. 60.) Plaintiff claims that it has built a reputation in all of its subsidiary businesses for providing reliable, high-quality services. (Pl.'s 56.1 ¶ 18.) Defendant ContextMedia distributes educational health-related content, including advertisements and health-related videos shown on television screens in the waiting rooms of doctors' practices. (Defs.' 56.1 ¶¶ 28–29.) According to plaintiff, some of ContextMedia's customers are located within the same geographic region as plaintiff's facilities and include physicians affiliated with one of plaintiff's main competitors; they also include pharmaceutical companies with which plaintiff does business and is likely to do business in the future. (Pl.'s 56.1 ¶¶ 92–93.)

In 2000, plaintiff retained Monigle, an advertising agency, to develop a new unified brand strategy for all of its businesses. (Pl.'s 56.1 ¶ 20.) According to plaintiff, Monigle's creative director Michael Herburger created a trademark that would symbolize and represent Guthrie's ideas and tell Guthrie's story. (Pl.'s 56.1 ¶¶ 22, 24–25, 27.) Guthrie ultimately selected an image as the centerpiece of its brand that it describes as "a shield-shaped device with a white stylized human figure inserted so as to segment the shield into four distinct sections astride the word 'GUTHRIE.'" (Guthrie Healthcare Sys.'s Mem. of L. in Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Opp.") 3, ECF No. 51; Pl.'s 56.1 ¶¶ 31–32.)

According to defendants, plaintiff first began using the shield artwork with the Guthrie name in April 2006. (Defs.' 56.1 ¶ 7.) According to plaintiff, it first launched its trademark and new brand identity in September 2001, and each of its subsidiary businesses has used the Guthrie brand and mark consistently since then. (Pl.'s Resp. ¶ 7; Pl.'s 56.1 ¶ 15.)[1] Plaintiff's mark is registered with the United States Patent and Trademark Office (the "PTO") for use in connection with "medical services, namely, hospital, emergency room, nursing home, home infusion, hospice and home health care and nursing services." (Defs.' 56.1 ¶ 25.)

According to plaintiff, it has aggressively advertised its business using its trademark since launching it in September 2001. (Pl.'s 56.1 ¶¶ 40, 42–51.) For example, plaintiff uses its mark in advertisements, educational and training programs, and in marketing. (Pl.'s 56.1 ¶¶ 42–44, 48–50.) Plaintiff claims that,

---

[1] As the Court finds triable issues as to liability, resolution of the conflict in dates (assuming materiality, which is not clear) is irrelevant to the outcome of this motion.

from 2008 to 2013, it spent over \$7 million promoting the Guthrie trademark and brand, with over \$5 million spent on advertising featuring the mark. (Pl.'s 56.1 ¶¶ 46–47.) In 2010, plaintiff initiated a plan to distribute healthcare-related information through a network of video screens. (Pl.'s 56.1 ¶¶ 52–54.)

According to plaintiff, it filed an application to register its trademark with the PTO on May 1, 2006. (Pl.'s 56.1 ¶ 61.) On January 22, 2008, the PTO registered plaintiff's mark. (Pl.'s 56.1 ¶ 64.)

ContextMedia has used its marks, which also consist of graphic artwork featuring a shield with text, since early March 2008. (Defs.' 56.1 ¶ 30.) ContextMedia began developing the artwork for its logo in late 2007. (Defs.' 56.1 ¶ 31.) ContextMedia hired Anthony Bonilla, a graphic designer recommended by an outside board member who ran a graphic design company, on a freelance basis. (Defs.' 56.1 ¶¶ 31–32.) Mr. Bonilla was given instructions about the brand image that ContextMedia sought. (Defs.' 56.1 ¶ 33.) Mr. Bonilla then created initial proposals, several of which used shields and stylized figures. (Defs.' 56.1 ¶ 35.)[2] Mr. Bonilla and ContextMedia went back and forth making alterations and design choices until a final mark was created. (Defs.' 56.1 ¶¶ 35–38.) There is no evidence in the record that Mr. Bonilla or ContextMedia had heard of plaintiff or seen its mark until several years later. (Defs.' 56.1 ¶¶ 34, 41.)

According to plaintiff, defendant Shah, the CEO, president, director, and controlling shareholder of ContextMedia, selected the trademarks that

---

[2] Plaintiff claims that the logo that ContextMedia ultimately chose was the only proposal that Mr. Bonilla submitted to ContextMedia that depicted a human figure inserted so as to segment the shield into four distinct sections. (Pl's 56.1 ¶¶ 105–06.)

4

ContextMedia would use. (Pl.'s 56.1 ¶¶ 157–64.) Plaintiff further asserts that defendants failed to conduct trademark searches for any of the marks. (Pl.'s 56.1 ¶ 112.)

Neither party was aware of the other party until December 2011, when plaintiff's co-CEO saw a ContextMedia holiday card that bore one of the ContextMedia marks. (Defs.' 56.1 ¶¶ 42–44.)

On January 3, 2012, a representative of plaintiff contacted ContextMedia in regard to its logo and requested an explanation from ContextMedia. (Defs.' 56.1 ¶ 44; Pl.'s Resp. ¶ 44; Pl.'s 56.1 ¶ 130.) According to plaintiff, it followed that phone call with a letter on February 1, 2012, but ContextMedia ignored both complaints. (Pl.'s 56.1 ¶ 132.)

By January 10, 2012, the PTO had registered or approved registration of four of ContextMedia's eight marks. (Defs.' 56.1 ¶ 39.) On January 27, 2012, the PTO initially rejected three of the remaining ContextMedia applications in light of plaintiff's prior-registered mark. (Defs.' 56.1 ¶ 41.) The PTO Examining Attorney noted that "the marks share a nearly identical depiction of a stick figure, formed by curved lines and superimposed on a shield," that the "striking similarity of the highly distinctive design element in both marks is sufficient to create a common commercial impression," and that patients encountering the marks "would likely assume such marks represent the same commercial source." (Pl.'s 56.1 ¶¶ 134–35.)

In response to the PTO's rejections, ContextMedia argued that there was no likelihood of consumer confusion because the marks as a whole were dissimilar; the

graphic portions were made up of elements commonly used in logos for health-related companies and thus the graphic portion of the mark was weak; the words (which were dramatically different) should be given greater weight than the graphic portions; the companies provided quite different services; and the companies had coexisted for a substantial amount of time with no actual consumer confusion. (Defs.' 56.1 ¶ 41.) The PTO then approved registration of those three marks. (Id.) On August 16, 2013, ContextMedia filed an application to register its eighth mark, for "ContextMedia: Health." (Defs.' 56.1 ¶ 39.)

There is no evidence of actual consumer confusion. (Defs.' 56.1 ¶ 45.)[3]

B. Procedural History

On October 26, 2012, plaintiff Guthrie filed its complaint against defendants, asserting a dozen causes of action. Counts One through Eight allege infringement of registered trademarks in violation of the Lanham Act, 15 U.S.C. § 1114. (Am. Compl. ¶¶ 49–112.) Counts Nine and Ten allege unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a). (Am. Compl. ¶¶ 113–125.) Count Eleven alleges common-law unfair competition. (Am. Compl. ¶¶ 126–132.) Count Twelve alleges trademark dilution in violation of 15

---

[3] Plaintiff objects to this statement. (Pl.'s Resp. ¶ 45.) However, plaintiff has failed to present any evidence of actual consumer confusion. Rather, plaintiff claims that a Thomson Compumark Research Report identified the Guthrie trademark as a conflicting trademark, and that the Doejo Agency, a design firm, advised ContextMedia of the similarity of its mark to Guthrie's. (Pl.'s 56.1 ¶¶ 136–37.) At best, these materials might indicate possible consumer confusion, not actual consumer confusion. Moreover, the statements in these materials, if proffered at trial, would constitute inadmissible hearsay. See Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement offered "to prove the truth of the matter asserted"). Because "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," those statements, offered for the truth, are inadmissible on this motion. Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 2000); see Fed. R. Civ. P. 56(e).

U.S.C. § 1125(c) (Am. Compl. ¶¶ 133–135); plaintiff has abandoned that claim (Pl.'s Opp. 1 n.1). Count Thirteen alleges common-law unjust enrichment. (Am. Compl. ¶¶ 136–139.)

On October 31, 2013, defendants moved for summary judgment on all counts. (ECF No. 35.) Defendants argue that they are entitled to summary judgment on plaintiff's trademark infringement, unfair competition, false designation of origin, and unjust enrichment claims because there is no genuine factual dispute that there is no likelihood of consumer confusion. (See Defs.' Mem. in Supp. of Their Mot. For Summ. J. ("Defs.' Mot.") 1, 7, 19, ECF No. 36.) Defendants also argue that plaintiff cannot obtain monetary relief on its Lanham Act claims and that individual defendant Shah cannot be held individually liable to plaintiff as a matter of law. (Defs.' Mot. 1.) That motion became fully briefed on December 16, 2013. (ECF No. 61.)

On January 14, 2014, defendants filed a motion to strike plaintiff's jury demand, arguing that plaintiff seeks only equitable relief and is therefore not entitled to a jury. (ECF No. 65.)

## II.    STANDARD OF REVIEW

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not

accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

### III.   DISCUSSION

In the instant case, the question of whether monetary relief would be available if liability were proven as to the Lanham Act claims is clearly answered in the negative.  However, questions of fact as to liability—and therefore nominal or other equitable forms of relief—remain.

### A.  Monetary Relief For Violations of the Lanham Act

Counts One through Ten contain plaintiff's Lanham Act claims, asserting violations of 15 U.S.C. §§ 1114 and 1125(a), for trademark infringement, unfair competition, and false designation of origin.  In order for a plaintiff to recover its damages or defendants' profits as to these claims, a plaintiff must show actual consumer confusion, bad faith, or willful deception.  Here, plaintiff has failed to raise a triable issue of fact as to these elements.  Accordingly, even if plaintiff can establish liability as to any or even all of its §§ 1114 and 1125(a) Lanham Act

claims, it has not raised a triable issue as to its entitlement to its damages or defendants' costs.[4] Summary judgment on this issue is therefore appropriate.

### 1. The Requirements for Monetary Relief

Section 35(a) of the Lanham Act provides that a successful plaintiff may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). In "exceptional cases," the Court may also "award reasonable attorney fees to the prevailing party." Id. As discussed below, the Second Circuit has limited the circumstances under which a plaintiff is entitled to recover defendant's profits and a recovery of attorneys' fees to only those cases involving bad faith. The Second Circuit has also limited recovery of plaintiff's own damages to situations involving actual consumer confusion or intentional deception. While plaintiff disagrees that this is a correct statement of current law, arguing that statutory amendments now require a different outcome, this Court disagrees.

Under Second Circuit precedent established prior to statutory amendments enacted in 1999, a plaintiff seeking an accounting of an infringer's profits had to "prove that the infringer acted in bad faith." International Star Class Yacht Racing

---

[4] These requirements apply to plaintiff's Lanham Act claims under both §§ 1114 and 1125(a), which are "governed by the same standard." Pfizer Inc. v. Sachs, 652 F. Supp. 2d 512, 520 (S.D.N.Y. 2009) (internal quotation marks and citations omitted); see also Playtex Prods., Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 167 (2d Cir. 2004); Cartier v. Aaron Faber, Inc., 512 F. Supp. 2d 165, 168–69 (S.D.N.Y. 2007). Thus, courts use the same standard to determine whether plaintiffs are entitled to damages under either provision. See, e.g., Gucci America, Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 243–44 (S.D.N.Y. 2012) (discussing the willfulness requirement in an action brought under both §§ 1114 and 1125), Chanel, Inc. v. Veronique Idea Corp., 795 F. Supp. 2d 262, 268–69 (S.D.N.Y. 2011); Nike, Inc. v. Top Brand Co., No. 00 Civ. 8179 (KMW), 2005 WL 1654859, at *9–11 (S.D.N.Y. July 13, 2005); see also GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d 457, 463 (S.D.N.Y. 2011) (discussing the willfulness requirement in an action brought under § 1114 and not § 1125(a)).

Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 753 (2d Cir. 1995) (citing George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 1540 (2d Cir. 1992)). A plaintiff seeking an award of damages also had to "prove either actual consumer confusion, . . . or that the defendant's actions were intentionally deceptive." Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 493 (2d Cir. 1993) (citing Basch, 968 F.2d at 1537). An award of attorneys' fees similarly required "evidence of fraud or bad faith." Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 194 (2d Cir. 1996).

In 1999, Congress amended the Lanham Act so that monetary recovery under 15 U.S.C. § 1125(c) (the provision dealing with trademark dilution, not at issue in this case) required a "willful" violation. See 15 U.S.C. § 1117 (providing for profits, damages, and costs "[w]hen . . . a willful violation under section 1125(c) of this title[] shall have been established"); see also MasterCard Int'l Inc., v. First Nat'l Bank of Omaha, Inc., No. 02 Civ. 3691 (DLC), 2004 WL 326708, at *10 (S.D.N.Y. Feb. 23, 2004). Prior to 1999, the Act provided for monetary recovery with respect to § 1125(c) based simply on the establishment of "a violation" of that provision. See id.

Here, plaintiff argues that, when Congress explicitly inserted a "willfulness" requirement for violations of § 1125(c) but did not include the same requirement for § 1125(a), Congress was thereby expressing an intent to eliminate any common-law requirement of willfulness for §§ 1114 and 1125(a) (the provisions at issue in this case) that may have arisen—including particularly in the Second Circuit. (Pl.'s Opp. 22.)

11

Certain courts in the Southern District Court of New York have indeed held that the "plain language of the statute . . . indicates that willfulness is not a prerequisite for an award of damages under § 1125(a)." Cartier v. Aaron Faber, Inc., 512 F. Supp. 2d 165, 173 (S.D.N.Y. 2007); see also Chanel, Inc. v. Veronique Idea Corp., 795 F. Supp. 2d 262, 268 (S.D.N.Y. 2011); Nike, Inc. v. Top Brand Co., No. 00 Civ. 8179 (KMW), 2005 WL 1654859, at *9–10 (S.D.N.Y. July 13, 2005).

Other courts in this District have found the opposite. See, e.g., Excell Consumer Prods Ltd. v. Smart Candle LLC, No. 11 C 7220 (MEA), 2013 WL 4828581, at *25–26 (S.D.N.Y. Sept. 10, 2013) (applying the Basch standard); Gucci America, Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 243 (S.D.N.Y. 2012) (same); Merck Eprova AG v. Gnosis S.p.A., 901 F. Supp. 2d 436, 457 (S.D.N.Y. 2012) (same); Fendi Adele S.R.L. v. Filene's Basement, Inc., 696 F. Supp. 2d 368, 393 (S.D.N.Y. 2010) (same); MasterCard, 2004 WL 326708, at *9–11.

This Court finds the rationale of those courts continuing to require willfulness as more persuasive. "It is appropriate to assume that Congress is aware of existing law when it passes or amends legislation. When Congress employs terms that have been interpreted by the federal courts, it is presumed to know of the terms' characterization." MasterCard, 2004 WL 326708, at *10 (citations omitted). Here, when Congress inserted the willfulness requirement for violations of § 1125(c), it left unaltered the language related to § 1125(a); it did so against the backdrop of clear Second Circuit precedent that required a willfulness finding for section 1125(a). Notably, at that time, the Second Circuit had not expressly

provided for a willfulness finding as to §1125(c). Therefore, as Judge Cote has explained, the Court may presume that the revised Act "incorporates the existing judicial interpretation" of the language regarding § 1125(a)—namely, the requirement of bad faith or intentional deception. See MasterCard, 2004 WL 326708, at *11.

The Second Circuit has not overruled its key decisions on point, and Congress has not amended the key provision of the statute. Accordingly, this Court agrees that "willful deception or bad faith continues to be a prerequisite to an award of profits or damages . . . until the Second Circuit instructs otherwise." Mr. Water Heater Enters., Inc. v. 1-800-Hot Water Heater, LLC, 648 F. Supp. 2d 576, 590 (S.D.N.Y. 2009) (citing MasterCard, 2004 WL 326708).

### 2. Actual Consumer Confusion

Plaintiff's textual argument regarding willfulness and bad faith does not attempt to reach precedent requiring actual consumer confusion for plaintiff to recover more than nominal damages. On this issue, defendants are entitled to summary judgment because plaintiff has failed to raise a triable issue of fact. Indeed, plaintiff admits that it "is not currently aware of any actual customer confusion." (Pl.'s Opp. 19; see also Pl.'s 56.1 ¶ 169 ("Guthrie has not received a consumer report of actual confusion . . . .").)

Undisputed facts in the record on this motion in fact contradict even an inference of actual confusion. The parties' marks have coexisted for five years with no evidence of any customer becoming confused between them. (Defs.' 56.1 ¶¶ 7, 30,

45.) The coexistence of two marks "with no report of a single customer becoming confused is a powerful indication that there is no confusion." Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 117 (2d Cir. 2009) (internal quotation marks omitted).

In addition, plaintiff has not presented any consumer survey evidence to show confusion. (Defs.' 56.1 ¶ 45.) A "failure to presents [a] consumer survey weighs against a finding of consumer confusion." Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 388 (2d Cir. 2005) (citing Merriam-Webster, Inc. v. Random House, Inc., 35 F.3d 65, 72 (2d Cir. 1994)).

In opposing defendants' motion for summary judgment, plaintiff argues that it "received reports from the USPTO and from a local design firm attesting to the likelihood that confusion existed." (Pl.'s 56.1 ¶ 169 (citing id. ¶¶ 133–37).) Specifically, according to plaintiff, a PTO examining attorney stated that the marks "create a common commercial impression" and that patients "would likely assume such marks represent the same commercial source," and that "the Doejo Agency, a design firm, advised ContextMedia of the similarity of the Guthrie Trademark and the ContextMedia [sic]." (Pl.'s 56.1 ¶¶ 134–35, 137.) As an initial matter, those statements cannot raise a triable issue as to actual consumer confusion. At best, such statements—if admissible—might support possible consumer confusion. However, those statements would, if proffered at trial, be inadmissible as hearsay. See Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement offered "to prove the truth of the matter asserted").

In the absence of a triable issue as to whether consumer confusion existed between the two marks, plaintiff must raise a triable issue as to whether defendants' "actions were intentionally deceptive"—i.e., in bad faith—to satisfy the requirements for profits, damages, and attorneys' fees. See Boosey, 145 F.3d at 493. This plaintiff has also failed to do.

### 3. Bad Faith or Willful Deception

"Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." Star Indus., 412 F.3d at 388 (2d Cir. 2005); see also W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 575 (2d Cir. 1993) (explaining that bad faith requires more than mere knowledge, but rather evidence that the defendant "intended to promote confusion between the products or appropriate [the plaintiff's] good will"). Even deliberate copying of a mark does not necessarily indicate that the defendant acted in bad faith, if there was no intent to deceive. See Starbucks, 588 F.3d at 118.

Here, plaintiff has not proffered evidence disputing that defendants lacked an "intent to copy" or "intent to deceive." See Starbucks, 588 F.3d at 118. The factual record on this issue is straightforward: a third-party graphic artist, Mr. Bonilla, designed the mark for defendants on a freelance basis. (Defs.' 56.1 ¶¶ 31–32.) See Star Indus., 412 F.3d at 389 (weighing the fact that a mark "was developed by a third party design firm" in favor of the defendant). Defendants instructed Mr. Bonilla to create a logo that fit their characteristics and desired brand; Mr. Bonilla

then presented a logo idea to defendants that used a shield and stylized human figure. (Defs.' 56.1 ¶¶ 33, 35–36.) Defendants favored that idea because it aligned with their desired focus on health and wellness content and their desired uplifting, encouraging, and positive image. (Defs.' 56.1 ¶ 37.) See Lang v. Retirement Living Pub. Co., 949 F.2d 576, 583 (2d Cir. 1991) ("Selection of a mark that reflects the product's characteristics . . . [is a] factor[] that support[s] a finding of good faith.").

Neither Mr. Bonilla nor Mr. Shah knew of plaintiff when Mr. Bonilla designed the mark and defendants adopted it. (Defs.' 56.1 ¶ 34.) See Star Indus., 412 F.3d at 388 ("This Court has never held adoption of a mark with no knowledge of a prior similar mark to be in bad faith . . . .").

Finally, ContextMedia received approval to register three of its marks from the PTO after the office specifically considered whether there was a likelihood of consumer confusion with plaintiff's mark. (Defs.' 56.1 ¶ 41.)[5] See Aceto Agric. Chems. Corp. v. Bayer Aktiengesellschaft, No. 10 Civ. 1770 (AJN), 2012 WL 3095060, at *11 (S.D.N.Y. July 30, 2012) (declining to find bad faith where "the U.S.P.T.O. had approved" the mark in question).

The evidence that plaintiff cites in support of its claim that defendants acted in bad faith or to willfully deceive is insufficient as a matter of law. For example, plaintiff asserts that defendants did not perform a full trademark search before seeking to register its mark. (Pl.'s 56.1 ¶ 112.) However, "failure to perform an

---

[5] Plaintiff objects to this fact in its Objections and Responses to Defendants' Rule 56.1 Statement of Undisputed Material Facts. (See Pl.'s Resp. ¶ 41.) However, the paragraphs to which it cites do not in fact dispute that the PTO approved registration for all three applications. (See Pl.'s 56.1 ¶¶ 132–40, 149–56.)

official trademark search," even with knowledge of plaintiff's potentially confusing

mark, "does not standing alone prove that [defendant] acted in bad faith."

Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 746 (2d Cir. 1998).

Plaintiff also contends that defendants' continued use of the mark after

becoming aware of plaintiff's complaints "can provide evidence of bad faith." (Pl.'s

Opp. 17; see Pl.'s 56.1 ¶¶ 131–32.) That may well be true in certain cases.

However, all three decisions cited by plaintiff—none of which control this decision—

cited the continued use of a mark together with other facts raising at least an

inference of bad faith. See Gucci Am., Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 223,

248 (S.D.N.Y. 2012) (citing intentional copying); Louis Vuitton Malletier, S.A. v.

Hyundai Motor Am., No. 10 Civ. 1611, 2012 WL 1022247, at *25 (S.D.N.Y. Mar. 22,

2012) (explaining that defendant's "design was intended to closely resemble

[defendant's] marks"); Stern's Miracle-Gro Prods., Inc. v. Shark Prods, Inc., 823 F.

Supp. 1077, 1088 (S.D.N.Y. 1993) (finding that the defendant knew of the existence

of the plaintiff's mark when adopting the mark, and that the defendant continued to

use the plaintiff's mark even after promising to discontinue its use). Such

additional facts are not present here, and this Court declines to hold that continued

use of a mark alone—particularly given the facts on this record—is sufficient to

raise a triable issue as to bad faith.

On the record before the Court on this motion, no rational juror could find

that defendant acted with the "intent to sow confusion between the two companies'

products." Star Indus., 412 F.3d at 388.

In the absence of a triable issue of fact as to whether defendant acted in bad faith, defendants are entitled to summary judgment that profits and attorneys' fees are unavailable as to plaintiff's Lanham Act claims here. See Tommy Hilfiger, 80 F.3d at 753; Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993) (explaining that attorneys' "fees should be awarded only on evidence of fraud or bad faith"). Furthermore, because there is no issue of material fact as to whether actual consumer confusion existed or whether defendant acted with willful deception, defendant is also entitled to summary judgment on the issue of damages. See Boosey, 145 F.3d at 493.

4. Nominal Damages and Costs

The Second Circuit's requirements for actual damages or profits do not apply to nominal damages or to costs available under the Lanham Act. See generally Tommy Hilfiger, 80 F.3d 749; Boosey, 145 F.3d 481; Basch, 968 F.2d 1532. Nominal damages and costs therefore remain potentially available to plaintiff should it prevail on liability claims. See also Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999) ("The Lanham Act also provides for the award of costs in all cases.");[6] Life Indus. Corp. v. Ocean Bio-Chem., Inc., 827 F. Supp. 926, 935 (E.D.N.Y. 1993) (finding that plaintiff was "entitled only to an award of nominal damages" even where "defendant's conduct was not willfully or intentionally deceptive" and plaintiff was "not entitled to attorney fees").

---

[6] Of course, the Court may, in its discretion, decline to award costs. See, e.g., Jovani Fashion, Ltd. v. Cinderella Divine, Inc., 820 F. Supp. 2d 569, 576 (S.D.N.Y. 2011); see also Basch, 968 F.2d at 1537 ("[T]he statute's invocation of equitable principles as guideposts in the assessment of monetary relief vests the district court with some degree of discretion in shaping that relief.").

## B. ContextMedia's Liability

Triable issues of material fact exist as to the merits of plaintiff's trademark infringement, unfair competition, false designation of origin, and unjust enrichment claims under sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

Counts One through Ten require a showing of a likelihood of (not actual) consumer confusion. Because, as discussed below, a rational juror could conclude that there is a likelihood of consumer confusion between the marks, summary judgment is denied as to liability on those counts.

### 1. Legal Standard for Lanham Act Claims

Claims under 15 U.S.C. §§ 1114 and § 1125(a) are "governed by the same standard: plaintiff must demonstrate that it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." Pfizer Inc. v. Sachs, 652 F. Supp. 2d 512, 520 (S.D.N.Y. 2009). That inquiry is "normally factual in nature." Universal City Studios, Inc. v. Nintendo Co., 746 F.2d 112, 116 (2d Cir. 1984). "[D]isputes between parties as to trade-mark validity and infringement can rarely be determined satisfactorily on a motion for summary judgment." Dan-Foam A/S v. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 305 (S.D.N.Y. 2007) (quoting Marcus Breier Sons v. Marvlo Fabrics, 173 F.2d 29, 29 (2d Cir. 1949)).

Defendants have not contested the first prong of the Lanham Act standard: that plaintiff has a valid mark entitled to protection. Plaintiff has provided documentation of the registration of its mark. (See Pl.'s 56.1 64–66; Stein Decl. ¶ 3,

ECF Nos. 55–56.) See Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 454 (S.D.N.Y. 2005).

The key inquiry is the second prong of the standard: the likelihood of confusion. "The likelihood of confusion analysis is typically guided by the eight factors set forth in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961)." MyPlayCity, Inc. v. Conduit Ltd., No. 10 Civ. 1615 (CM), 2012 WL 1107648, at *19 (S.D.N.Y. Mar. 30, 2012). Those eight factors are "the strength of [the] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers." Polaroid, 287 F.2d at 495. "[C]ourts generally should not treat any single factor as dispositive . . . . Instead, the court should focus on the ultimate question of whether consumers are likely to be confused." Playtex Prods., Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 162 (2d Cir. 2004).

The Court has already found no triable issue of material fact as to the fifth and sixth factors; as explained above, no reasonable juror could find that there was actual consumer confusion here or that defendants acted in bad faith. However, considering the balance of factors, the Court concludes that there are triable issues of disputed fact that preclude summary judgment.[7]

---

[7] "The Second Circuit has suggested that the first three Polaroid factors—strength, similarity of marks, and proximity of products—are perhaps the most significant in determining the likelihood of confusion.'" GMA Accessories, Inc. v. Croscill, Inc., No. 06 Civ. 6236 (GEL), 2008 WL 591803, at *3 (Mar. 3, 2008). Accordingly, the Court focuses on those three factors here.

2. Strength

The first Polaroid factor, strength, refers to "the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." McGregor-Doniger Inc. v. Drizzle, Inc., 599 F.2d 1126, 1131 (2d Cir. 1979). There are triable issues as to this element.

Defendants argue that plaintiff's mark is weak in large part because the shield—the part of the mark that is similar to defendants' mark—is a "weak source-identifier[]." (See Def.'s Mot. 14–15.) According to Monigle creative director Michael Herburger, who designed plaintiff's mark, the use of shields and the use of stylized human figures are both commonplace in the healthcare field. (Defs.' 56.1 ¶¶ 13–15.)

Defendants are correct that courts have held that the common use of components of a mark may weaken a mark. See Streetwise Maps, 159 F.3d at 744 (finding the "Streetwise" mark weak because other manufacturers used the word "street" and "wise" in other products); Lang, 949 F.2d at 581 (finding that "extensive third party use" of the words in the plaintiff's mark "weighs against a finding that [its] trade name is strong"); W.W.W. Pharm., 984 F.2d at 573 (same). Here, however, defendants cannot show (and have not shown) evidence for a ruling as a matter of law regarding the commonality of the shield imagery. Defendants cite Monigle's creative director for the proposition that such shields are commonplace in the healthcare field, but provide no other factual support for their statement. In

contrast, plaintiff states that its shield imagery features a cutout right-hand corner that distinguishes its shape from other shield images. (Pl.'s 56.1 ¶ 28.)

On this record, there remains a triable issue of fact as to whether the shield and human figure graphics are sufficiently commonly used as to render plaintiff's mark weak.[8]

### 3. Similarity of Marks

"When evaluating the similarity of marks, courts consider the overall impression created by a mark. Each mark must be compared against the other as a whole; juxtaposing fragments of each mark does not aid in deciding whether the compared marks are confusingly similar." Brennan's, Inc. v. Brennan's Restaurant, L.L.C., 360 F.3d 125, 133 (2d Cir. 2004).

An initial glance at the two marks indicates similarities between them: each mark contains a distinctive stylized human figure placed inside a shield divided into four sections, accompanied by text. (See Pl.'s Opp. 3 (citing Pl.'s 56.1 ¶¶ 31–32); Def.'s Mot. 4.) Plaintiff argues that the two graphic portions of the marks share a

---

[8] The Court notes that plaintiff is not without support for its position as to strength. Plaintiff alleges that it has used the mark continuously since 2001 and that it has spent millions of dollars promoting the mark and the Guthrie brand. (Pl.'s 56.1 ¶¶ 40, 46–47.) See Cadbury Beverages, 73 F.3d at 479 (finding a mark to be strong because it had been used for many years); Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C., 182 F.3d 133, 139 (2d Cir. 1999) ("[E]vidence of advertising can bolster a mark's strength . . . ."); United States Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 528 (S.D.N.Y. 2011) (explaining that advertising using a mark "bolsters its strength"). Plaintiff also argues that it has built a strong reputation for providing reliable, high-quality services and that the public has a high level of recognition of the Guthrie name and brand. (See Pl.'s 56.1 ¶¶ 18, 58–60 (providing statistics on plaintiff's brand recognition).) It is unclear, however, whether the strength of plaintiff's brand equates with or evidence of to the strength of its mark in this instance. (See Defs.' Reply Mem. in Supp. of Their Mot. for Summ. J. ("Defs.' Reply") 7, ECF No. 61.)

"striking resemblance," and has overlaid one graphic on top of the other to show their alleged similarity. (See Pl.'s Opp. 9.)[9]

Defendants focus almost exclusively on the difference in the text in the two marks. It is certainly true that the word portions—"GUTHRIE" and "ContextMedia"—look and sound different and have different meanings. (See Defs.' Mot. 11.) It is also true that the words also have different typefaces and capitalizations, see W.W.W. Pharm., 84 F.2d at 573 (comparing typefaces and capitalizations); J.T. Colby & Co. v. Apple Inc., No. 11 Civ. 4060 (DLC), 2013 WL 1903883, at *17 (S.D.N.Y. May 8, 2013) (same), and that the words are the names of the parties themselves, see Playtex, 390 F.3d at 164–65 ("[T]he presence of a distinct brand name may weigh against a finding of confusing similarity.").[10] Defendant also argues that "the word portion is often accorded greater weight in determining the likelihood of confusion." Alzheimer's Found. of Am., Inc. v. Alzheimer's Diseases & Related Disorders Ass'n, 796 F. Supp. 2d 458, 465 (S.D.N.Y. 2011).

However, a court is to consider marks as a whole, and "juxtaposing fragments of each mark does not aid in deciding whether the compared marks are confusingly similar." Brennan's, 360 F.3d at 133. Defendant has proffered evidence that plaintiff's branding guidelines require the graphic and text to be "locked together"

---

[9] Of course, as set forth above, a jury would not be entitled to find the marks to be confusingly similar based solely on the similarity between the graphic portions. See Brennan's, 360 F.3d at 133 ("Each mark must be compared against the other as a whole; juxtaposing fragments of each mark does not aid in deciding whether the compared marks are confusingly similar.").

[10] But see Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 395 (2d Cir. 1995) (explaining that, in certain cases, "addition of a trade name does not necessarily alleviate the problem of confusion of marks, and indeed, can aggravate it").

and "never separated." (Defs.' 56.1 ¶¶ 22–23.) As a result, defendant views that the different text portions of the marks as dispositive. See Brennan's, Inc., 360 F.3d at 133. However, plaintiff has proffered evidence that ContextMedia at times uses the ContextMedia logo alone. (Pl.'s 56.1 ¶ 172.) Furthermore, even if the graphic and text consistently appear together, the marks overall may still be confusingly similar. See Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C., 182 F.3d 133, 140 (2d Cir. 1999) (discussing which of the portions of the marks in question were "dominant").

Furthermore, "[i]f the appearance of the marks is similar enough that it may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark, there may still be similarity." Lebewohl v. Heart Attack Grill LLC, 890 F. Supp. 2d 278, 294 (S.D.N.Y. 2012) (internal quotation marks and citations omitted). Such issues are not well-suited to summary judgment. See Universal City Studios, Inc., 746 F.2d at 116; Dan-Foam A/S, 500 F. Supp. 2d at 305. Nor have the parties presented facts or evidence on those issues.

In certain instances, some courts can rule that marks are distinctive as a matter of law. See, e.g., Playtex, 390 F.3d at 164 (finding that the phrase "Quilted Northern Moist-Ones" was not confusingly similar to "Wet Ones" based on numerous differences in the sound and appearance of the words as well as the packaging of the products). Here, however, the Court cannot rule on this question as a matter of law: the graphic portions of the marks appear similar, whereas the

text portions differ; but the parties have not adduced sufficient evidence as to which portions appear dominant to consumers, or whether consumers would find the marks overall to be confusingly similar. See GMA Accessories, Inc. v. Croscill, Inc., No. 06 Civ. 6236 (GEL), 2008 WL 591803, at *6 (S.D.N.Y. Mar. 3, 2008); see also Lebewohl, 890 F. Supp. 2d at 294.

### 4. Proximity of Products

In determining proximity, "courts take into account whether the products compete, whether the goods serve the same purpose, and whether they 'fall within the same general class, or are used together.'" Colby, 2013 WL 1903883, at *17 (quoting Savin Corp. v. Savin Grp., 391 F.3d 439, 458 (2d Cir. 2004)).

Defendants argue that the parties' services are not proximate, because "Guthrie treats patients and derives . . . its revenue from patient care," whereas "ContextMedia is a digital media distribution company" that "charge[s] sophisticated corporate sponsors such as pharmaceutical companies for advertising" in physicians' waiting rooms." (Defs.' Mot. 7–8 (citing Defs.' 56.1 ¶¶ 1, 6, 28–29); Pl's 56.1 ¶¶ 1–19.) While both businesses broadly relate to health, it is true that courts reject proximity analyses that are generalized at an overly high level. See W.W.W. Pharm. Co., 984 F.2d at 573 (explaining that lip balm and deodorant are both "personal care products" but are not proximate); Colby, 2013 WL 1903883, at *17 (finding that computer software enabling downloading of electronic books was not proximate to print books).

25

Plaintiff nonetheless raises factual issues that preclude summary judgment on this factor. To begin with, direct competition is not required for this factor. See Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 150 (2d Cir. 2003). Plaintiff asserts that defendants' advertising focuses on "various health concerns, such as diabetes, rheumatic conditions, dermatology/skin care, and cardiology/heart health issues," and that "[i]t would be natural for a health care provider like Guthrie to provide this type of advertising and information to its patients." (Pl.'s Opp. 16 (citing Pl.'s 56.1 ¶¶ 69, 73).) Thus, there is a triable issue as to whether plaintiff and defendants' products may be sufficiently similar to render them proximate. See Virgin, 335 F.3d at 151 (finding a "high degree of proximity" between plaintiff's sales of consumer electronic audio equipment and defendants' sales of telephones and telephone services). The evidence adduced by plaintiff—though not necessarily open-and-shut—"could reasonably support a jury's verdict for the non-moving party" here. Dan-Foam A/S, 500 F. Supp. 2d at 305 (quoting Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002)).[11]

5. Other Factors

There are sufficient issues of material fact as to the first three and most important factors—strength of the parties' mark, similarity of the parties' marks, and proximity of the parties' products—to require the denial of summary judgment

---

[11] The Court also notes that the "concern with product proximity relates to the likelihood that customers may be confused as to the source of the products, rather than as to the products themselves, and the concern is not direct diversion of purchasers but indirect harm through loss of good will or tarnishment of reputation." Spring Mills, Inc. v. Ultracashmere House, Ltd., 689 F.2d 1127, 1134 (2d Cir. 1982) (emphasis added) (internal quotation marks omitted). Whether or not defendants' use of its mark is likely to cause such loss of goodwill to plaintiff requires the type of fact-intensive weighing of evidence that is poorly suited to summary judgment. See Dan-Foam A/S, 500 F. Supp. 2d at 305.

on liability for Counts One through Ten. The Court also notes triable issues of material fact as to the other factors as well.[12]

## C. Liability on State-Law Claims

In light of the rulings above, defendants are entitled to summary judgment on plaintiff's common-law unfair competition claim. "[T]o prevail on a claim of unfair competition under New York law, a plaintiff must show (1) likelihood of confusion and (2) bad faith on the part of the defendants." Lopez v. Gap, Inc., 883 F. Supp. 2d 400, 430 (S.D.N.Y. 2012); see also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995) ("[T]he essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.") (alteration in original) (internal quotation marks omitted). As described above, there exist issues of material fact with respect to likelihood of confusion. However, there is no triable issue as to whether defendants acted in bad faith. Accordingly, plaintiff cannot prevail on its common-law unfair competition claim as a matter of law. See Colby, 2013 WL 1903883, at *26.

---

[12] For example, plaintiff alleges that it intends to "bridge the gap"—that is, to enter the same market as CMI—by offering "direct video advertising and media content to its patients in waiting rooms." (Pl.'s Opp. 18–19 (citing Pl.'s 56.1 ¶¶ 52–54).) Defendants argue that this plan does not bridge the gap into defendants' line of business, because defendants distribute educational and advertising content to be displayed in hospital waiting rooms, whereas plaintiff would display information about its own health care services. (Defs.' Reply 8.) However, the inquiry focuses on the assumptions of the typical consumer. See Cadbury Beverages, 73 F.3d at 482; GMA Accessories, 2008 WL 591803, at *7. Here, plaintiff has proffered sufficient evidence to create a triable issue of fact as to whether a typical consumer would expect that plaintiff, a health care provider, had entered the market for distributing educational and advertising videos in its waiting rooms.

However, the Court denies defendants' motion for summary judgment as to plaintiff's claim of unjust enrichment. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004). Here, plaintiff's unjust enrichment claim is founded on defendants' alleged infringement of its marks. Because those claims survive summary judgment, plaintiff's unjust enrichment claim must also survive summary judgment. See Colby, 2013 WL 1903883, at *26; BigStar Entm't, Inc. v. Next Big Star, Inc., 105 F. Supp. 2d 185, 217 (S.D.N.Y. 2000).

### D. Shah's Individual Liability

Defendant Shah argues that he cannot be held individually liable for any of defendant ContextMedia's violations of the Lanham Act or New York common law. (Defs.' Mot. 21–22.) "[A] corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active conscious force behind [the defendant corporation's] infringement." Cartier, 512 F. Supp. 2d at 170 (alteration in original) (internal quotation marks omitted). "Demonstrating that the corporation's officer authorized and approved the acts of unfair competition which are the basis of the corporation's liability is sufficient to subject the officer to personal liability." Martal Cosmetics, Ltd. v. International Beauty Exchange Inc., 2007 WL 895697, at *23 (E.D.N.Y. Mar. 22, 2007).

Here, genuine issues of material fact preclude summary judgment. It is undisputed that a third-party graphic designer designed ContextMedia's marks; that one of ContextMedia's outside directors recommended the designer; and that Mr. Shah had not heard of plaintiff until early 2012, several years after ContextMedia designed its mark in 2007 and 2008. (Defs.' 56.1 ¶¶ 31–32, 34.) However, plaintiff alleges that Mr. Shah is the CEO, president, controlling shareholder, and 60% owner of ContextMedia, and that, as ContextMedia's principal contact with Mr. Bonilla, he controlled the process of selecting the trademark at issue in this case. (Pl.'s 56.1 ¶¶ 157–162.)

Based on those facts, the Court cannot rule as a matter of law that Mr. Shah was not a "moving, active, conscious force" behind ContextMedia's alleged infringing activity. Cartier, 512 F. Supp. 2d at 170 (finding that principals of a company could be held personally liable because they arranged for the infringing acts in question); see also Calvin Klein Jeanswear Co. v. Tunnel Trading, No. 98 Civ. 5408 (THK), 2001 WL 1456577, at *6 (S.D.N.Y. 2001) (finding that a sole corporate officer and employee served as a "moving, active, conscious force" behind the corporation's conduct). Defendant's motion for summary judgment on the claims against defendant Shah is therefore denied.

E. Defendants' Motion to Strike Plaintiff's Jury Demand

Defendants have also filed a motion to strike plaintiff's jury demand, arguing that plaintiff seeks only equitable relief and is therefore not entitled to a jury. This Court agrees.

Plaintiff has requested six forms of relief: (1) damages, (2) an injunction restraining defendants from using the mark in question, (3) an order cancelling the infringing registrations, (4) an accounting of profits, (5) an order requiring defendants to destroy all materials bearing the infringing marks, and (6) attorneys' fees and costs. As explained above, plaintiff is not entitled to an accounting of defendants' profits or an award of damages under the Lanham Act, or attorneys' fees associated with those claims, because plaintiff has failed to show bad faith, actual consumer confusion, or intentional deception. See Conopco, 95 F.3d at 194; Tommy Hilfiger, 80 F.3d at 753; Boosey, 145 F.3d at 493.

The remaining non-monetary forms of relief that plaintiff seeks are equitable, not legal. As an initial matter, injunctions restraining defendants from using their mark and requiring them to destroy all materials bearing the mark are quintessentially equitable forms of relief. See Weinberger v. Romero-Barcelo, 465 U.S. 305, 311 ("It goes without saying that an injunction is an equitable remedy."). Furthermore, a "claim for cancellation of a trademark registration pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, is equitable in nature and does not give rise to a jury trial." Emmpresa Cubana Del Tabaco v. Culbro Corp., 123 F. Supp. 2d 203, 209 (S.D.N.Y. 2000). Even if plaintiff prevails on its unjust enrichment claim, any profits based on that claim are similarly an equitable remedy. See id. at 206 (citing Basch, 968 F.2d at 1538). Finally, any award of attorneys' fees and costs is equitable in nature. See Emmpresa Cubana, 123 F. Supp. 2d at 211; Nikon, Inc. v. Ikon Corp., 803 F. Supp. 910, 928 (S.D.N.Y. 1992).

Because plaintiff is entitled only to equitable remedies, plaintiff is not entitled to a trial by jury. See Emmpresa Cubana, 123 F. Supp. 2d at 213. Accordingly, defendants' motion to strike plaintiff's jury demand is granted.

## IV.    CONCLUSION

For these reasons, defendants' motion for summary judgment is GRANTED IN PART on the issues of (1) monetary relief and (2) plaintiff's common-law unfair competition claim, and DENIED IN PART on (1) plaintiff's Lanham Act claims for the infringement of plaintiff's registered trademarks, unfair competition, and false designation of origin, (2) plaintiff's unjust enrichment claim, and (3) defendant Shah's individual liability. Defendants' motion to strike plaintiff's jury demand is GRANTED.

The Clerk of Court shall close the motions at ECF Nos. 35 and 65 and shall strike plaintiff's jury demand.

Trial in this matter is currently scheduled to begin on Monday, February 3, 2014. The parties shall appear for a teleconference to discuss the trial on **Wednesday, January 22, 2014, at 3:00 p.m.** The final pretrial conference in this matter is rescheduled from Tuesday, January 28, 2014, at 1:00 p.m. to **Monday, January 27, 2014, at 2:30 p.m.**

SO ORDERED.

Dated:    New York, New York
          January 15, 2014

                                        K. B. Forrest
                                    KATHERINE B. FORREST
                                    United States District Judge