USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/11/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
GUTHRIE HEALTHCARE SYSTEM, :
:
                Plaintiff, : 12-cv-7992 (KBF)
:
                -v- : MEMORANDUM
: DECISION & ORDER
CONTEXTMEDIA, INC. et al., :
:
                Defendants. :
:
------------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

      Following a bench trial on February 5, 2014, this Court issued an order granting judgment to plaintiff Guthrie HealthCare System ("Guthrie") on its claims of trademark infringement, unfair competition, and false designation of origin. (ECF No. 123.) The Court requested that the parties submit a joint proposed order consistent with the Court's opinion. (Id. at 36.) The parties were, however, unable to agree on the language of a proposed injunction. On July 10, 2014, plaintiff and defendants submitted dueling proposed injunctions. (ECF Nos. 126, 127.) The instant decision resolves the outstanding differences.

      The parties' proposed injunctions differ in the following ways: (1) ContextMedia's proposal allows for the continued use of its trademarks on its websites, in social media, and in other online content; (2) Guthrie's proposal includes two counties with Guthrie facilities that ContextMedia's does not; and (3)

Guthrie's proposal covers six other counties based on referrals to Guthrie facilities by doctors in each of those counties.

For the reasons set forth below, this Court adopts the scope and language of the proposed injunction submitted by defendants.

The Trial

Guthrie provides medical services to patients in the Twin Tiers region (i.e., certain counties in Northern Pennsylvania and Southern New York) (the "Guthrie Service Area"). Patients and their families enter waiting rooms associated with Guthrie's medical providers. Guthrie's mark, including the stylized human figure, appears on a variety of materials and associated with the Guthrie system and its medical providers.

For its part, ContextMedia has commercial relationships with medical providers who practice in the Guthrie Service Area.[1] Those providers have allowed ContextMedia to deploy television screens in waiting areas. The screens play medical and health-related content as well as advertisements. ContextMedia has a trademark also containing a stylized human shield. The Court's decision of June 20, 2014 found that there was a likelihood that Guthrie patients would associate the ContextMedia mark with Guthrie or vice-versa. (See ECF No. 123.)

---

[1] CMI owns and operates a series of digital healthcare platforms delivering condition-specific educational programming to patients at waiting areas and in some cases to treatment rooms or physicians' offices. (Decl. of Rishi U. Shah ¶ 1, ECF No. 105.) In almost all cases, CMI derives its revenue through advertisements periodically displayed between segments of programming. (Id.) The physicians therefore do not generally pay anything to have the service in their office. (Id.) A very small percentage of physicians chooses to pay for the service and does not receive advertisements. (Id.)

2

The evidence presented at trial was almost exclusively devoted to the likelihood of confusion by patients in Guthrie's waiting rooms—in particular, that those waiting in such areas were likely to be confused as to whether Guthrie endorsed the ContextMedia content. To a lesser extent, Guthrie described concerns that pharmaceutical companies with which it has clinical trial relationships would or could believe that Guthrie controlled such content. There was no evidence at trial that any patient or representative of a pharmaceutical company had ever in fact been confused.

The Court's decision of June 20, 2014 focused on that which the parties had focused on at trial: the likelihood of confusion in waiting rooms. (See ECF No. 123.) The Court specifically declined to find a likelihood of confusion in areas outside of the Guthrie Service Area.

The Scope of the Injunction

Guthrie's proposed injunction now seeks to expand the reach of its victory beyond its proof at trial and beyond that which the Court determined in its favor. After receiving Guthrie's proposed injunction, which would prohibit the use of ContextMedia's trademarks in online content and would apply to counties outside the Guthrie Service Area as initially defined, the Court requested that the parties submit specific references to the trial record supporting such expanded scope.

Guthrie's submission makes clear that, if this Court were to enter the injunction it has requested, it would effectively be rendering a new and broader

3

decision. As stated above, Guthrie has proposed a broader injunction than ContextMedia in three ways.

First, ContextMedia's proposed injunction is limited in scope to "patient education content, promotional or marketing materials, or other communications distributed within the Guthrie Service Area," and provides an express exemption for ContextMedia's use of its trademarks on its websites, in social media, and in other online content available to the public at large through the Internet. (See ECF Nos. 126–128.) The Court agrees with ContextMedia that the evidence presented at trial regarding a likelihood of confusion centered on potential patient confusion in physician waiting rooms, not on online content, and that any injunctive relief must be limited to the Guthrie Service Area, thus excluding any injunction against ContextMedia's online content, which is available nationwide. (See ECF No. 123.)

Guthrie has cobbled together several pieces of evidence, particularly related to ContextMedia's marketing and recruitment efforts through websites and social media, in support of its position that this injunction should incorporate online content. (See, e.g., Shah Decl. ¶¶ 2, 5, 10, ECF No. 105; PX-49; PX-111; PX-152.) However, evidence that ContextMedia participates in such recruitment does not in any way suggest that viewers of ContextMedia's websites—whether patients, member physicians, sponsor pharmaceutical companies, or others—would be confused between ContextMedia and Guthrie due to their similar trademarks. The experience of a patient passively viewing video content in a Guthrie waiting room, and the likelihood of confusion arising from such an experience, does not speak to

4

any likelihood of confusion by a user consciously seeking out ContextMedia's websites. Rather, Guthrie relies on speculation, conjecture, and primarily a supposed <u>lack</u> of evidence proffered by ContextMedia to support the assertion that patients viewing online content would <u>not</u> believe that there is some association between Guthrie and ContextMedia. (<u>See</u> ECF No. 130 at 5; ECF No. 131 at 4.) That is an inappropriate reversal of the burden of proof. Guthrie has failed to meet its burden of proving that ContextMedia's websites cause a "<u>probability</u> of confusion, not a mere <u>possibility</u>, affecting numerous ordinary prudent purchasers." <u>Star Indus., Inc. v. Bacardi & Co., Ltd.</u>, 412 F.3d 373, 383 (2d Cir. 2005) (emphasis added) (internal quotation marks omitted).[2] Based on the evidence (or lack thereof) at trial, the Court lacks any basis for factual findings regarding a likelihood of confusion as to the use of the marks online.

Second, ContextMedia's proposed injunction includes only 14 counties in Pennsylvania and New York, whereas Guthrie's proposal also includes Tompkins and Schuyler Counties. (<u>See</u> ECF Nos. 127, 128.) Trial evidence indicated that Guthrie's service area covered 11 counties in the Twin Tiers region. (<u>See, e.g.</u>, Trial Tr. 88:06–14, ECF No. 113.) ContextMedia proposed a more inclusive injunction extending to the 14 counties comprising the Twin Tiers region according to

---

[2] For instance, there was virtually no evidence presented by either side at trial regarding (1) who the online audience was, is, or is likely to be (<u>e.g.</u>, on social media); (2) precisely what the online content is, beyond the few examples provided, and how the marks are used therein; (3) whether anyone in fact accesses the online content; (4) where those users may be geographically situated; and other potentially relevant issues. These areas were simply not developed at the trial, and it would be inappropriate for the Court to impose what could be broad injunctive relief with respect thereto. <u>See</u> <u>Brennan's, Inc. v. Brennan's Restaurant, L.L.C.</u>, 360 F.3d 125, 133 (2d Cir. 2004) (explaining that any injunction should be "no broader than necessary to preserve the senior user's rights").

Wikipedia. (ECF No. 134 at 8.) Guthrie now argues that the injunction should extend even further, to two counties where Guthrie has "locations." (PX-41, at GUTHRIE-00390.) However, while there is evidence that these "office locations" deliver certain medical services (PX-64, at Guthrie-01024, Guthrie-01026), Guthrie has presented no evidence regarding the setup of these locations, in particular the patient waiting-room experience there. Accordingly, Guthrie has not proven that any patient exposure to ContextMedia content in waiting rooms in those counties would occur or would be similar to exposure in the 11 counties discussed at trial. Simply referring to and listing other Guthrie locations in other counties cannot support granting injunctive relief over those counties.[3]

Finally, in addition to the aforementioned 14 counties, Guthrie argues that the injunction should also cover six other counties in Pennsylvania and New York based on referrals to Guthrie facilities by doctors in each of those counties. (See ECF Nos. 126–128.) However, any evidence that Guthrie has proffered showing that healthcare providers in various counties refer patients to Guthrie facilities does not support a likelihood of confusion in and of itself. (See PX-57 (listing references by physicians in various counties).) Again, the evidence at trial centered almost entirely on patients' experiences in waiting rooms in the Guthrie Service Area and on the likelihood of confusion by sponsors like pharmaceutical companies. Doctors and healthcare providers are more sophisticated customers than patients are; any

---

[3] Similarly, the polling information provided by Guthrie demonstrates only that the public is aware of Guthrie's existence as a health care provider in Tompkins and Schuyler counties, not that the public is likely to be confused as between Guthrie and ContextMedia's trademarks. (See PX-65.)

6

likelihood of confusion caused by Guthrie and ContextMedia's similar trademarks is likely lower with respect to doctors than with respect to patients. In any event, Guthrie has adduced no evidence to the contrary regarding the likelihood of such confusion.

For the aforementioned reasons, the Court finds that the injunction in this matter should be limited in scope to "patient education content, promotional or marketing materials, or other communications distributed within the Guthrie Service Area," i.e., the 14 counties enumerated in ContextMedia's proposed injunction. The Court does not mean to suggest that Guthrie could not have somehow met its burden of proof to support a broader injunction through relevant evidence. However, the Court will not now make assumptions about what other forms of evidence and proof could have shown.

By separate order, the Court enters an injunction largely in the form submitted by ContextMedia.[4]

SO ORDERED.

Dated:    New York, New York
          August 11, 2014

                                                _____
                                                KATHERINE B. FORREST
                                                United States District Judge

---

[4] The parties also disagree as to the date on which the three-year period during which the Court will retain jurisdiction over this matter should begin. (See ECF No. 123 at 35; ECF Nos. 126–128.) The Court will maintain jurisdiction over the injunction for three years from the time that the injunction takes effect—i.e., 30 days from the date of this order.